**NOT FOR PUBLICATION**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------X

| | |
|---|---|
| In Re: | Chapter 13 |
| GORDON A. WASHINGTON, | Case No. 14-14573-TBA |
| Debtor. | |

-------------------------------------------------------------X

| | |
|---|---|
| GORDON A. WASHINGTON, | Adv. Pro. No. 14-01319-TBA |
| Plaintiff, | Hearing date:  September 30, 2014 |
| v. | |
| SPECIALIZED LOAN SERVICING, LLC, and THE BANK OF NEW YORK MELLON, as Trustee for the Certificate-holders of the CWABS, Inc., Asset-backed Certificates, Series 2007-5 | |
| Defendants. | |

-------------------------------------------------------------X

**APPEARANCES:**

Walter D. Nealy, Esq.
100 South Van Brunt Street
Englewood, NJ 07631
*Attorney for Gordon A. Washington*

Charles A. Gruen, Esq.
Rosa Amica-Terra, Esq.
Law Offices of Charles A. Gruen
381 Broadway - Suite 300
Westwood, NJ 07675
*Special Counsel for Gordon A. Washington*

David V. Mignardi, Esq.
Kenneth J. Flickinger, Esq.
Karen B. Olson, Esq.
Knuckles, Komosinski & Elliott, LLP
565 Taxter Road - Suite 590
Elmsford, NY 10523
*Attorney for Specialized Loan Servicing, LLC,
and The Bank of New York Mellon*

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

## I.    INTRODUCTION.

"No one gets a free house." This Court and others have uttered that admonition since the early days of the mortgage crisis, where homeowners have sought relief under a myriad of state and federal consumer protection statutes and the Bankruptcy Code. Yet, with a proper measure of disquiet and chagrin, the Court now must retreat from this position, as Gordon A. Washington ("the Debtor") has presented a convincing argument for entitlement to such relief. So, with figurative hand holding the nose, the Court, for the reasons set forth below, will grant Debtor's motion for summary judgment.

These matters come before the Court on a motion and two cross motions for summary judgment in the adversary complaint filed by Debtor to determine the validity, priority and extent of the mortgage lien on his three-family residence in Madison, New Jersey, against Defendant creditors Specialized Loan Servicing, LLC, and The Bank of New York Mellon (as Trustee for the Certificate-holders of the CWABS, Inc., Asset-backed Certificates, Series 2007-5) ("SLS" and "BoNY") (collectively "the Defendants," represented by one counsel).  The motions are:

(1) the Debtor's motion for partial summary judgment based on the argument that the 6-year statute of limitations applicable to suit on a negotiable instrument under N.J.S.A. § 12A:3-118(a) has expired, so that Defendants are out of time to sue on their mortgage note on which Debtor defaulted on or about June 1, 2007 (dkt. 7)[1]; and

(2) the Defendants' cross motion for partial summary judgment based on the argument that the 20-year statute of limitations applicable to foreclosure of a mortgage under N.J.S.A. § 2A:50-56.1(c) has *not* expired, so that Defendants may still foreclose the *mortgage* on which Debtor defaulted on or about June 1, 2007 (dkt. 11); and finally

(3) the Debtor's cross motion for summary judgment on the mortgage based on the arguments:

---

[1] Docket references are to adv. pro. no. 14-1319 unless stated otherwise.  Debtor provided a signed Rule 56.1 Statement of Undisputed Material Facts ("Debtor SUMF") at dkt. 8 to replace the unsigned copy at dkt. 7, but this opinion refers to the Debtor's SUMF at dkt. 7 for consistency with the other elements of Debtor's motion.

> (a) that the 6-year statute of limitations applicable to foreclosure of a mortgage *in which the maturity date has been accelerated* under N.J.S.A. § 2A:50-56.1(a) has expired, so that the Defendants are out of time to sue on either the note or the mortgage; and

> (b) that Defendants lack standing to enforce the note and mortgage because the Assignment is defective and because the Defendants waived their interest in the loan under a Settlement Agreement (dkt. 19).

The Defendants filed a reply brief at dkt. 22.[2]  The Court heard oral argument on September 30, 2014 and reserved on the narrow issue of whether N.J.S.A. § 2A:50-56.1(a) and 11 U.S.C. §§ 502(b)(1) and 506(d) operate to make the mortgage unenforceable, to disallow the Defendants' claim, and to void the mortgage lien so that the Defendants have no claim against the Debtor, the property or the estate.

## II.    JURISDICTION.

The Court has jurisdiction over these matters under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on October 17, 2013.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## III.    BACKGROUND.[3]

### The acquisition of the property.

On February 27, 2007, the Debtor purchased a three-family home at 11 Walnut Street, Morris County, New Jersey ("Property"), paying a $130,000 deposit and obtaining a 30-year adjustable rate mortgage and note for $520,000 for the balance with first payment due on April 1, 2007 (dkt. 7-2, Debtor's Certification in Support of Summary Judgment, ¶ 4, Exhibit A, note).

---

[2] At dkt. 22, p. 1, n.1, the Defendants note the procedural impropriety of the Debtor having filed a cross motion to a cross motion. The Court considers the Debtor's cross motion at dkt. 19 as opposition to the Defendants' cross motion, and the Defendants' reply memorandum at dkt. 22 as a response thereto. For consistency with the docket entries, however, this opinion cites to Debtor's dkt. 19 as to the 'cross motion.'

[3] The facts recited herein are undisputed by any of the parties.

The mortgagee was America's Wholesale Lender (dkt. 7-2, Debtor, ¶ 5, 9). Debtor's attorney asserts that Countrywide Home Loans served as the mortgage servicer, an assertion disputed by the Defendants (dkt. 7, Debtor SUMF, ¶ 7). Debtor moved into the third-floor apartment and began to renovate the first and second floor apartments to rent (dkt. 7-2, Debtor ¶ 7). During renovation, the first and second floor apartments suffered water damage and became uninhabitable (dkt. 7-2, ¶ 7). Debtor failed to make the July 1, 2007 mortgage payment, and the loan has been in continuous default since that time (dkt. 7-2, Debtor, ¶8).[4]

**The bankruptcy case.**

The Debtor filed a voluntary Chapter 7 petition on March 12, 2014, along with a motion to convert the case to one under Chapter 13. The case was converted by Order entered on April 9, 2014. The claims bar date was August 18, 2014. Thereafter, the Debtor filed an original Plan on May 19, 2014 (main dkt. 17) and a first modified Plan on August 5, 2014 (main dkt. 25); a confirmation hearing is scheduled presently for November 20, 2014. Each Plan proposes to *sell* the above property in a short period. The first Plan proposes payments of 12 months @$492 plus $554,000 in the last month; the second Plan proposes payments of 17 months @$492 plus $554,000 in the last month. The Debtor projected the value of the property at $550,000-$600,000 and scheduled the Defendants' debt at $519,000. The Defendants filed a proof of claim for $920,469 (claim 7-1) (the $519,000 scheduled by the Debtor represents only the *principal* due) and filed an objection to the Plan because it indicates a short sale with a payoff of only $554,000 in the 18th month (main dkt. 34, ¶5). The Plan suggests (does not state) that Debtor seeks to cram down the note on this three-family home to the value of the property; but

---

[4] Debtor believes that a friend made the July 1, 2007 payment but has not pressed or proven that point (dkt. 7-2, Debtor, ¶ 8). The unassailable fact that Debtor went into default within 90 days of the loan closing makes this decision even less palatable.

the clear aim of this adversary proceeding is to render the Defendants' note and mortgage not only undersecured but wholly unenforceable.

Debtor scheduled $137,000 in general unsecured claims.  Proofs of claim timely filed include, in addition to the claim of Defendants, $15,000 in priority tax claims; $70,000 in general unsecured claims (including $15,000 due a relative); and an additional $63,000 due on a student loan.  The Debtor proposes a *pro rata* distribution to the general unsecured creditors.

### The adversary proceeding.

The Debtor filed this adversary proceeding on March 18, 2014 (dkt. 1).  The Defendants answered on May 2, 2014 (dkt. 4), and on May 19, 2014 the parties entered a Joint Scheduling Order which scheduled trial for December 5, 2014 (dkt. 5).  The Debtor filed the initial motion for partial summary judgment on June 2, 2014, and the cross motions followed.  On September 30, 2014, in addition to hearing oral argument on these motions, the Court, on Defendant's motion, entered an Order which compelled discovery, modified the Joint Scheduling Order and rescheduled trial to February 20, 2015 at 10:00 a.m. (dkt. 23).

### The mortgage documents and related pleadings.

The February 1, 2007 Adjustable Rate Note ("the note") between America's Wholesale Lender and Debtor stated a principal of $520,000, periodic payments beginning April 1, 2007 at 8.950% interest, and monthly debt service of $4,165.34 (dkt. 7, Exhibit A).  The note defined March 1, 2037 as the Maturity Date and provided that any amounts due would be paid on that date (dkt. 7, Exhibit A, ¶ 3(A), Maturity Date).  The note contained the following default provisions and remedy:

> 7. BORROWER'S FAILURE TO PAY AS REQUIRED
> . . .
> (B) Default
> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(dkt. 7, Exhibit A).

The mortgage, dated February 27, 2007, referenced the note and contained its own

default provisions:

NON-UNIFORM COVENANTS.   Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.**   Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 [based on borrower's transfer of the property] unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceedings and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Sections 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclosure this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

and

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

. . .

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting lender's interest in the Property and rights under this security instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by the Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18 [Transfer of the Property or a Beneficial Interest in Borrower].

. . .

(dkt. 7, Exhibit B, ¶¶ 22 and 19). Accompanying the mortgage were an Adjustable Rate Rider and a 1-4 Family Rider which included at paragraph H an absolute assignment of rents (dkt. 7 Exhibit B, Mortgage). Both accompanying documents were dated February 27, 2007.

The mortgage was assigned by MERS as Nominee for America's Wholesale Lender to co-Defendant The Bank of New York [as Trustee] for the Benefit of the Certificate-holders, CWABS Inc. Asset-Backed Certificates Series 2007-5 ("BoNY") for $1.00 by an Assignment of Mortgage effective November 12, 2007 but recorded on September 9, 2008 (dkt. 7, Exhibit L, "the Assignment").

The Assignment recites the original amount of the mortgage as $520,000 and states in relevant part:

7

And the Assignor covenants that there is now due and owning upon the Mortgage and the Bond, Note or other obligation secured thereby, the sum of $519,132.54 Dollars principal with interest thereon to be computed at the rate of 8.950 percent per year from June 1, 2007, along with such other sums as may be collectible, and that there are no set-offs, counterclaims or defenses against the Mortgage or the Bond, Note or other obligation, in law or in equity, nor have there been any modifications or other changes in the original terms thereof, other than as stated in this Assignment.

(dkt. 7, Exhibit L).[5]  Debtor relies in part on this language in the Assignment for the proposition

that the Defendants accelerated the maturity date of the note and mortgage to June 1, 2007 (dkt.

19-13, Debtor's response to Defendants' SUMF, ¶ 5; dkt 19-13, Debtor's Counterstatement of

Undisputed Material Facts, ¶ 5, 13; dkt. 19-1, Debtor's certification in support of cross motion,

¶¶ 6, 9-10, 13; dkt. 19-14, Debtor's brief in support of cross motion, pp. 1, 2, 8, 12, 14, 16-17).

On December 14, 2007, the Defendants filed a foreclosure Complaint in Superior Court

of New Jersey, Chancery Division, Morris County, Dkt. No. F-34837-07 (dkt. 7, Exhibit E) ("the

Complaint").  The Complaint described the loan as "an obligation (note) to secure the sum of

$520,000.00 payable on March 1, 2037" (dkt. 7, Exhibit E, ¶ 1).  The Complaint continues in

relevant part:

8.  The Defendants named in Paragraphs 1 and 2 above, or their grantee or grantees, if any has failed to make the installment payment due on June 1, 2007, and all payments becoming due thereafter.  Therefore the loan has been in default since July 1, 2007, and said payments have remained unpaid for more than 30 days from the date of the mailing of the Notice of Default to the obligor, and are still unpaid.  **Plaintiff herein, by reason of said default, elected that the whole unpaid principal sum due on the aforesaid obligation and mortgage referred**

---

[5] The Defendants also provided a copy of this recorded Assignment at dkt. 11, Exhibit C.  Debtor questions the authenticity and effectiveness of the Assignment generally, because a different version of it, unrecorded and bearing different officer signatures, was attached to the foreclosure complaint, *infra* (dkt. 19, Exhibit 3, "Unrecorded Assignment").  Both the recorded and the Unrecorded Assignment contain the clause accelerating the debt to June 1, 2007.

Matthew R. Stahlhut, officer at Bank of America ("BoA"), asserts that BoA serviced the loan from its inception through transfer of servicing rights on November 16, 2013 to defendant-servicer SLS (dkt. 11-3, Stahlhut cert., ¶5). Defendants provide an Amended Assignment of Mortgage signed on December 31, 2013, recorded on January 8, 2014, purportedly to correct the name of BoNY (dkt. 11, Exhibit D, "Amended Assignment").  The Amended Assignment is different in format from the original Assignment and does not contain the acceleration clause.

**to in Paragraphs 1 and 2 above, with all interest and advances made, shall be now due** (Emphasis added).

. . .

10. Notice of Intention to Foreclose was sent in compliance with the Fair Foreclosure Act more than 31 days prior to filing of the complaint.

(dkt. 7, Exhibit E, ¶¶ 8, 10).  Debtor also relies on ¶ 8 in the Complaint for the proposition that the Defendants accelerated the maturity date of the loan to June 1, 2007 (dkt. 7, Debtor's SUMF, ¶ 11; dkt. 7-2, Debtor's certification in support of motion, ¶ 12; dkt. 7-22, Debtor's brief, p. 3). The Debtor filed his Answer on February 8, 2008 and in it neither admitted nor denied the allegations in ¶ 8 but *denied* the allegations in ¶ 10 (dkt. 7, Exhibit F (Answer), ¶¶ 8, 10).

Defendants concur that the payment default occurred on July 1, 2007 (the interest default having occurred on June 1, 2007) but dispute the acceleration date (dkt. 11-2, July 29, 2014 affidavit of Cynthia Wallace for SLS in support of Defendants' crossmotion, ¶ 4b; dkt. 11-3, affidavit of Matthew R. Stahlhut for BoA in support of Defendants' crossmotion, ¶ 7). Defendants "assert that the subject loan . . . was accelerated on December 14, 2007 upon the filing of the 2007 Foreclosure Complaint" (dkt. 11-1, Defendants' response to Debtor's SUMF, ¶ 8, also ¶ 11; dkt. 11-1 Defendants' Counterstatement of Undisputed Material Facts, ¶ 5).    As explained below, whether the default and acceleration date is reckoned as June 1, 2007, July 1, 2007 or December 14, 2007, does not affect the outcome of this case.

By Return Notice dated October 28, 2010, the Office of Foreclosure returned the foreclosure judgment package to BoNY with extensive deficiencies noted, including at ¶ 23, "One attorney certified copy of each of the following must be submitted:  bond or note, recorded mortgage, assignments(s), if any" (dkt. 7, Exhibit H, "Return Notice" dated October 28, 2010). BoNY filed a Notice of Lis Pendens dated February 5, 2013, recorded on February 7, 2013 (dkt. 7, Exhibit M, "Notice of Lis Pendens").

On May 31, 2013, the Superior Court Clerk's Office issued a notice of intent to dismiss the foreclosure case without prejudice for lack of prosecution within 30 days unless the plaintiff produced <u>one</u> of the following documents:  amended complaint; request for default or motion to enter default out of time; motion to: strike answer, enter judgment or for summary judgment; proof of bankruptcy filing or other condition that stays the case; affidavit or certification asserting that failure to file or take the next required action is due to exceptional circumstances" (dkt. 7, Exhibit I, "Foreclosure Dismissal Notice").  Counsel for BoNY responded on June 21, 2013 that he intended to file an Order to Show Cause to obtain more time (dkt. 7, Exhibit J, Certification of John Caporale, Esq.).  On July 5, 2013, the Superior Court Clerk's Office issued a Foreclosure Dismissal Order, dismissing the Defendants' complaint for lack of prosecution without prejudice and with the provision, "Reinstatement of the matter after dismissal may be requested by a motion for good cause" (dkt. 7, Exhibit K) ("Foreclosure Dismissal Order"). BoNY caused a Discharge of Lis Pendens to be recorded on August 21, 2013 (dkt. 7, Exhibit N, "Discharge of Lis Pendens").

Thus, to date, the Defendants have not obtained a Final Judgment of Foreclosure. Moreover, Defendants admit the dismissal of the foreclosure Complaint without prejudice (dkt. 11-1, response to Debtor's SUMF, ¶¶ 17, 19).[6]  Debtor certifies that Defendants' failure to produce the original note, mortgage or assignment was the primary basis for the dismissal (dkt. 7-2, Debtor, ¶¶ 14, 17, 20) and contends that BoNY never produced the original note during the foreclosure proceedings (dkt. 7-22, Debtor's brief, p. 4), citing N.J. R. 4:64-2(a) (which requires production of original documents in support of foreclosure judgment).  Following inspection of

---

[6] In response to Debtor's SUMF, ¶ 16, that the Defendants "never obtained a judgment against the Homeowner in the 2007 Foreclosure Complaint," Defendants assert without documentary evidence or certified response that they obtained "summary judgment," but that judgment (not provided) appears simply to have stricken the Debtor's answer (dkt. 11-1, Defendant's response to Debtor's SUMF, ¶ 16).

Defendants' files on October 7, 2014, the Debtor appears to concede that Defendants have the original note[7], but challenged the absence of an Allonge which Defendants assert does not exist (dkt. 25, Debtor's October 9, 2014 letter to the Court; dkt. 26, Defendants' October 10, 2014 responsive letter to the Court). The basis for the dismissal of the foreclosure proceeding and whether Defendants possess an Allonge have little or no bearing on the Court's decision in this matter.

## IV.    DISCUSSION.

### The Parties' Positions

The Debtor initially argued that BoNY's claim for action on the note accrued on June 1, 2007, when BoNY declared the default and accelerated the loan.   The Debtor asserted that N.J.S.A. § 12A:3-118(a) serves as the statute of limitations for bringing an action on the note as a negotiable instrument (dkt. 7-22, Debtor's brief, pp. 12-13).[8]   Inasmuch as the statute of limitations under N.J.S.A. § 12A:3-118(a) runs six years after the due date or the accelerated due date, the Debtor posited that BoNY was time-barred from enforcing the note and that the Debtor should be granted summary judgment as a matter of law, declaring the note unenforceable.

In their cross motion, the Defendants *conceded* that the 6-year statute of limitations for enforcement of the note had run but argued that enforcement of the mortgage is subject to a 20-year statute of limitations recognized as a common law matter in *Security Nat'l Partners Ltd. P'ship v. Mahler*, 336 N.J. Super. 101, 107, *cert den.*, 169 N.J. 607 (2001) ("*Mahler*") and later

---

[7] Cynthia Wallace, an officer of SLS, certifies that CWABS, Inc., Asset-Backed Certificates, Series 2007-5 ("the Trust") "maintain[s] . . . through its custodian" the note, mortgage, assignment, and corrective assignment signed December 31, 2013 and recorded on January 8, 2014 (dkt. 11-2, Wallace cert. ¶¶ 1, 3 and dkt. 11, Exhibits A, B, C, D).

[8] N.J.S.A. § 12A:3-118(a) provides:  "Except as provided in subsection e. of this section, an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note *or, if a due date is accelerated*, within six years after the accelerated due date."   N.J.S.A. § 12A:3-118(a) (emphasis added).  Uniform Commercial Code cmt. 2 to this section iterates, "If the note is payable at a definite time, a six-year limitations period starts at the due date of the note, subject to prior acceleration."

codified at N.J.S.A. § 2A:50-56.1(c) ("Statute of limitations relative to foreclosure proceedings") (dkt. 11-14, Defendants' brief, p. 4). Defendants submit that that they are entitled to foreclose on the property and to apply the sale proceeds to their debt but admit that they are unlikely to be able to enforce any deficiency against the Debtor.[9] *In re Pecora*, 297 B.R. 1, 3 (Bankr. W.D.N.Y. 2003) (distinguishing debtor liability for the mortgage debt from the persistence of the mortgagee's lien, citing *Dewsnup v. Timm*, 502 U.S. 410, 417-18 (1992) and *Johnson v. Home State Bank*, 501 U.S., 78, 84-85 (1991)). The Defendants contend that the Trust is entitled to summary judgment because there is no genuine issue of material fact and they can enforce the mortgage as a matter of law.

In his cross motion, Debtor argues that Defendants' declaration of default and acceleration (which both parties acknowledge with respect to the note, *supra*) advanced the *maturity date of the mortgage* to June 1, 2007 so that under N.J.S.A. § 2A:50-56.1(a), which requires the mortgagee to file a foreclosure action within 6 years of the *maturity date* of the mortgage, Defendants cannot pursue foreclosure of the Property (dkt. 19-14, pp. 12-18; dkt. 7, Exhibits L and E). Whether the accelerated *maturity* of the mortgage is found to be July 1, 2007, or December 14, 2007 (as urged by Defendants), the Defendants are still out of time under Debtor's interpretation of N.J.S.A. § 2A:50-56.1(a) to file a foreclosure complaint.

In their response, the Defendants press *Mahler* and make the bare assertion that the lender-accelerated date does not satisfy the requirement in N.J.S.A. § 2A:50-56.1(a) of a "*maturity* date set forth in the mortgage or the note, bond, or other obligation secured by the mortgage, whether the date is itself set forth or may be calculated from information contained in the mortgage or note, bond, or other obligation." N.J.S.A. § 2A:50-56.1(a) (emphasis added);

---

[9] Defendants state that the 6-year statute of limitations would obviate any deficiency claim, but Debtor's eventual discharge in Chapter 13 or Chapter 7 would also relieve him of personal liability for the debt. N.J.S.A. § 2A:50-52 ("No deficiency judgment") also prohibits deficiency judgments on foreclosures under this statute.

(dkt. 22, Defendants' reply brief, pp. 6-7).  The question for the Court is whether acceleration of the note and mortgage advanced the *maturity date* so that N.J.S.A. § 2A:50-56.1(a) cuts off the Defendants' cause of action, and whether this statute, effective August 6, 2009, applies to the instant case.

### The Fair Foreclosure Act and N.J.S.A. § 2A:50-56.1

N.J.S.A. § 2A:50-53 through -68, "Foreclosure of Residential Mortgages" ("Fair Foreclosure Act," or "FFA"), was approved on September 5, 1995, effective on December 4, 1995 and applicable "'to foreclosure actions commenced on or after that date.'" N.J.S.A. § 2A:50-53, citing L. 1995, c. 244, § 19 (a note to the Act).   The Legislature made part of the body of the statute the finding and declaration that it is "public policy of this State that homeowners should be given every opportunity to pay their home mortgages" and that mortgagees benefit when defaulted loans return to performing status.  N.J.S.A. § 2A:50-54.  The FFA defines "residential mortgage" as one secured by a property with not more than 4 dwelling units, "one of which shall be, or is planned to be, occupied by the Debtor or a member of the Debtor's immediate family as the Debtor's or member's residence at the time the loan is originated" and therefore applies to the 3-dwelling-unit residence occupied by the Debtor when the loan originated.  N.J.S.A. § 2A:50-55 ("Definitions"); (dkt 7-2, Debtor, ¶ 7).

The FFA codifies the mortgagee's obligation to give borrowers precise notice of the mortgagee's intention to foreclose and the borrowers' opportunities to cure defaults.  *U.S. Bank Nat'l Ass'n. v. Guillaume*, 209 N.J. 449, 469-70 (2012).  The statute acknowledges acceleration of the maturity date as a consequence of default and de-acceleration as a consequence of curing default:

2A:50-56.  Written notice of intent to foreclose; contents

a.  Upon failure to perform any obligation of a residential mortgage by the residential mortgage debtor and *before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation and commence any foreclosure or other legal action to take possession of the residential property* which is the subject of the mortgage, the residential mortgage lender shall give the residential mortgage debtor notice of such intention at least 30 days in advance of such action as provided in this section.

N.J.S.A. § 2A:50-56(a) (West 2000 and Supp. 2014) (emphasis added).  N.J.S.A.

§ 2A:50-57 provides:

2A:50-57.  Right to cure default; procedure

a.  Notwithstanding the provisions of any other law to the contrary . . . the debtor . . . shall have the right at any time, up to the entry of final judgment or the entry by the office or the court of an order of redemption pursuant to [N.J.S.A. § 2A:50-56], *to cure the default, de-accelerate and reinstate the residential mortgage by tendering the amount or performance specified in subsection b. of this section.* . . .

d.  Cure of a default reinstates the debtor to the same position as if the default had not occurred. *It nullifies, as of the date of cure, any acceleration of any obligation under the mortgage, note or bond arising from the default.*

N.J.S.A. § 2A:50-57 (West 2000 and Supp. 2014) (emphases added).  "Acceleration" and

"maturity" are not otherwise defined in the statute.  Certain courts view as axiomatic the

proposition that acceleration advances the maturity date of the debt.  *Bank v. Kim*, 361 N.J.

Super. 331, 344 (App Div. 2003) ("In pursuit of this objective [of encouraging homeowners to

cure mortgage defaults], N.J.S.A. 2A:50-56 sets forth in considerable detail the steps required of

a lender seeking to *accelerate maturity* and foreclose a residential mortgage upon the debtor's

failure to perform an obligation under the mortgage"); *In re LHD Realty Corp.*, 726 F.2d 327,

330 (7th Cir. 1984) (determining that a mortgagee loses its right to a prepayment premium when

it decides to accelerate a debt "because acceleration, by definition, advances the maturity date of

the debt so that payment thereafter is not prepayment but instead is payment made after

maturity"); *cited in Westmark Comm. Mtge. Fund IV*, 362 N.J. Super. 336, 345, 346-47 (App. Div. 2003) (which ultimately decided that prepayment premium was due and payable notwithstanding acceleration because the parties had bargained for it).

Shortly after the Fair Foreclosure Act was enacted, the Appellate Division of the Superior Court of New Jersey in *Security Nat'l Partners Ltd. P'shp v. Mahler*, 336 N.J. Super. 101, 105 (App. Div. 2000), *cert. den.*, 169 N.J. 607 (2001) addressed the absence of a statute of limitations for foreclosure actions in New Jersey ("this State has never had a statute of limitations expressly referring to mortgage foreclosures").   In *Mahler*, the parties entered the note and mortgage on June 22, 1988 with final payment due June 22, 2003; the debtors defaulted on March 22, 1989; and the lender filed a foreclosure complaint on August 8, 1990.  *Id.* at 103.  After the complaint was filed, the debt was transferred multiple times, and the second-to-last assignee unilaterally dismissed the complaint.  On June 26, 1996, the last assignee, the plaintiff-appellant, refiled the complaint which the chancery court dismissed as untimely.  *Id.* at 103.  The Appellate Division in *Mahler* reiterated the distinction between action on the note and action on the mortgage and declared that the lender's time to sue on the note, governed by the 6-year statute of limitations in N.J.S.A. § 12A:3-118(a), had run.   *Mahler*, 336 N.J. Super. at 105.   The court rejected the borrowers' argument that the same 6-year statute governed suits on the mortgage.  *Id.* at 105.

The Appellate Division in *Mahler* observed that New Jersey common law had developed a 20-year limitation period for a suit on a mortgage

> by borrowing and applying the twenty-year limitation period in certain adverse possession statutes.  The concept was that a mortgagor in possession or control of the mortgaged property, who failed to make required payments under the mortgage, was in "adverse possession" of the property since—by his conduct—he was denying the mortgagee's claim of ownership and right to possession.

*Mahler*, 336 N.J. Super. at 106.

The Appellate Division in *Mahler* reiterated that, apart from non-payment throughout the limitations period, the debtor is not required to take any other action to establish adverse possession. *Mahler*, 336 N.J. Super. at 107. The court in *Mahler* concluded that a foreclosure action is time-barred if not commenced within 20 years after the debtor's default; declared that the time had not run in its case; and echoed the request in a well-known treatise that New Jersey adopt a statute of limitations for mortgage foreclosure actions. *Mahler*, 336 N.J. Super. at 106-107, 108; 30 *New Jersey Practice, Law of Mortgages* § 298, at 196 (Roger A. Cunningham & Saul Tischler) (1975).

In response to *Mahler*, the New Jersey Legislature promulgated as part of the Fair Foreclosure Act N.J.S.A. § 2A:50-56.1 ("Statute of limitations relative to foreclosure proceedings"), effective August 6, 2009:

2A:50-56.1  Statute of limitations relative to foreclosure proceedings.

An action to foreclose a residential mortgage shall not be commenced following the earliest of:

a. *Six years from* the date fixed for the making of the last payment or *the maturity date set forth in the mortgage or the note, bond, or other obligation secured by the mortgage, whether the date is itself set forth or may be calculated from information contained in the mortgage or note, bond, or other obligation*, except that if the date fixed for the making of the last payment or the maturity date has been extended by a written instrument, the action to foreclose shall not be commenced after six years from the extended date under the terms of the written instrument;

b. Thirty-six years from the date of recording of the mortgage, or, if the mortgage is not recorded, 36 years from the date of execution, so long as the mortgage itself does not provide for a period of repayment in excess of 30 years; or

c. Twenty years from the date on which the debtor defaulted, which default has not been cured, as to any of the obligations or covenants contained in the mortgage or in the note, bond, or other obligation secured by the mortgage, except that if the date to perform any of the obligations or covenants has been extended by a written instrument or payment on account has been made, the action to foreclose shall not be commenced after 20 years from the date on which the

16

default or payment on account thereof occurred under the terms of the written instrument.

N.J.S.A. § 2A:50-56.1 (West 2000 and Supp. 2013) (emphasis added).

As explained in the Assembly Financial Institutions and Insurance Committee Statement, Senate, No. 250-L. 2009, c. 105 ("the Committee Statement") accompanying the bill which became N.J.S.A. § 2A:50-56.1, the statute "in part, codifies the holding in *Security National Partners Limited Partnership v. Mahler*, 336 N.J. Super. 101 (App. Div. 2000)." The Committee Statement in an October 6, 2008 report says:

> The Assembly Financial Institutions and Insurance Committee reports favorably Senate Bill 250 (1R).
>
> This bill supplements the "Fair Foreclosure Act," P.L.1995, c.244 (C.2A:50-53 et seq.) by applying a statute of limitations to residential mortgage foreclosure actions. *The bill is intended to address some of the problems caused by the presence on the record of residential mortgages which have been paid or which are otherwise unenforceable. These mortgages constitute clouds on title which may render real property titles unmarketable and delay real estate transactions.*
>
> The bill provides that a foreclosure action must be commenced by the earliest of: (1) six years from the date of maturity on the mortgage or other obligation secured by the mortgage, *matching the six-year statute of limitations on actions based on contract law*; (2) 36 years from the date of recording or execution of the mortgage, provided the mortgage itself does not provide for a period of repayment in excess of 30 years, again relying upon the six-year statute of limitations for contract law; or (3) 20 years from the date of default by the debtor on the mortgage or other obligation secured by the mortgage, matching the 20-year statute of limitations on adverse possession actions. *Thus, the bill allows a determination that certain mortgages are not clouds on title because a party can no longer bring an action to foreclose them beyond the bill's expressly stated statute of limitations, as borrowed from actions in contract law or adverse possession, as applicable.*
>
> The bill, in part, codifies the holding in <u>Security National Partners Limited Partnership v. Mahler</u>, 336 N.J. Super. 101 (App. Div. 2000) which applied a 20-year statute of limitations to a residential mortgage foreclosure action based on a default due to nonpayment. In its decision, the court noted that since there is currently no statute of limitations expressly applicable to mortgage foreclosures in these situations, courts have resorted to drawing analogies to adverse possession statutes which bar rights of entry onto land after 20 years. This bill would resolve

the uncertainties surrounding this area of law by providing a specific statute of
limitations of 20 years from the date of the default by the debtor.

(cited at N.J.S.A. § 2A:50-56.1 (West 2000 and Supp. 2013)) (emphases added).

While federal courts allow recourse to legislative history to interpret a statute only if the text is "ambiguous or otherwise unclear," the New Jersey Supreme Court has encouraged the use of "extrinsic aids" to interpretation. *Compare U.S. v. Cheeseman*, 600 F.3d 270, 285-86 (3d Cir.), *cert den.*, ___ U.S. ___, 131 S. Ct. 636 (2010) (concurring) *with Nat'l Waste Recycling, Inc. v. Middlesex Cty. Improvement Auth.*, 150 N.J. 209, 224 (1997); *but see U.S. Bank. Nat'l Ass'n. v. Guillaume*, 209 N.J. at 471-72 (the court must construe a statute from its plain language; stop the "'interpretive process'" if there is no ambiguity, and "'not resort to extrinsic interpretive aids when the statute is clear and unambiguous'") (internal citations omitted). The legislative history accompanying N.J.S.A. § 2A:50-56.1(a) provides a limited measure of guidance as to whether the maturity referenced in the statute includes an accelerated maturity date. The Committee Statement notes that the six-year limitations period "match[es] the six-year statute of limitations on actions based on contract law." If the foreclosure statute is meant to parallel N.J.S.A. § 2A:14-1, that statute is neutral on acceleration and maturity:

> Every action at law . . . for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued [except for action on breach of sale governed by N.J.S.A. § 12A:2-275].

N.J.S.A. § 2A:14-1 ("Limitation of Actions/Adverse Possession/Various Actions/Six Years"). If the foreclosure statute is meant to parallel N.J.S.A. § 12A:3-118 ("Negotiable Instruments/ General Provisions and Definitions/Statute of Limitations"), there is a stronger argument that an accelerated maturity date applies and starts the running of the statute of limitations:

Except as provided in subsection e. of this section, an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note *or, if a due date is accelerated*, within six years after the accelerated due date.

N.J.S.A. § 12A:3-118(a) (emphasis added) (As stated earlier Uniform Commercial Code cmt. 2 to this section iterates, "If the note is payable at a definite time, a six-year limitations period starts at the due date of the note, subject to prior acceleration.")

### The Application of N.J.S.A. § 2A:50-56.1 to this Case

N.J.S.A. § 2A:50-56.1 went into effect on August 6, 2009 (West 2000 and Supp. 2014). The statute does not state whether the effective date is measured against the date of the mortgage, the date of the default, or the date on which the foreclosure action is filed.  The parent Fair Foreclosure Act became effective on the 90th day after its September 5, 1995 enactment (effective December 4, 1995) and "appl[ied] to *foreclosure actions commenced* on or after the effective date."  N.J.S.A. § 2A:50-53, citing L. 1995, c. 244, § 19 (a note to the Act) (emphasis added).  If the amendment at N.J.S.A. § 2A:50-56.1 is presumed to measure effectiveness in the same manner, then the statute does apply to the instant case in which the Defendants have not yet filed a viable foreclosure complaint.

Defendants contended at the September 30, 2014 hearing that a foreclosure complaint filed now should "relate back" to the complaint filed on December 14, 2007 and dismissed without prejudice on July 5, 2013 (dkt. 7, Exhibits E and K).  In the unsolicited letter of October 9, 2014, Debtor argued that a foreclosure action filed now would not "relate back" to the original proceeding because the Defendants discharged the *lis pendens* and failed to appeal the July 5, 2013 dismissal, with the 45-day appeal period having expired (dkt. 25, October 9, 2014 letter to the court; N.J.R. 4:37-1, cmt. 1.2; N.J.R. 4:37-2(a), cmt. 4; *O'Loughlin v. Nat'l Comm. Bank*, 338 N.J. Super. 592, 603 (App. Div.), *cert. den.*, 169 N.J. 606 (2001) ("[a] dismissal without

prejudice adjudicates nothing and does not constitute a bar to re-institution of the action, subject

to the constraint imposed by the statute of limitations") (affirming the dismissal of a complaint in

part because plaintiff failed to refile by the deadline stipulated in a consent order, citing the

comment to N.J.R. 4:37–1).  In their reply letter, the Defendants did not respond to the Debtor's

challenge to their "relation back" argument (dkt. 26, October 26, 2014 letter to the Court).

To the extent that N.J.S.A. § 2A:50-56.1 applies to this case only if given retroactive

application, this statute meets the criteria for retroactive application reiterated in *James v. N.J.*

*Mfrs. Ins. Co.*, 216 N.J. 552, 558, 563 (2014).   In New Jersey, statutes are given prospective

application (1) unless "'the Legislature intended to give the statute retroactive application'" and

(2) provided retroactive application does not "'result in either an unconstitutional interference

with vested rights or a manifest injustice.'"  *James*, 216 N.J. at 563, *quoting In re D.C.*, 146 N.J.

31, 50 (1996) and *Phillips v. Curiale*, 128 N.J. 608, 617 (1992) (other internal citations omitted

by *James*).   The court in *James*, collecting other cases, expanded the first prong to three

circumstances:

> (1) that the Legislature expressed or implied its intent for retroactivity (necessity for
> fulfilling a legislative goal; unworkability without retroactive application);
>
> (2) that the amendment is merely curative or clarifying rather than representing a change in
> existing law; or
>
> (3) that the expectations of the parties warrant retroactivity.

*James*, 216 N.J. at 563. If any of these circumstances exists, the Court still examines whether

retroactive application would result in "manifest injustice," meaning that "'the parties relied on

prior law to their detriment, such that retroactive application would cause a "deleterious and

irrevocable" result.'"  *James*, 216 N.J. at 565, *quoting Gibbons v. Gibbons*, 86 N.J. 515, 523-24

(1981).  Myron Weinstein in New Jersey Practice indicated that giving the broadest application

to N.J.S.A. § 2A:50-56.1 fulfills legislative purpose:

It is not clear whether the statute is retroactive or whether it only applies to *mortgages or defaults* after the effective date. If so, its benefits would be greatly reduced, as one of its stated purposes is to remove mortgage constituting "clouds on title which may render real property titles unmarketable and delay real estate transactions.

Myron, Weinstein. *Law of Mortgages*.   29 New Jersey Practice § 13.16 ("Statute of

Limitations") (emphasis added).   By any prospective or retroactive measure of effectiveness,

N.J.S.A. § 2A:50-56.1 applies to the instant case.

The Defendants accelerated the maturity date of the loan to the June 1, 2007 default date,

as acknowledged in the Assignment (dkt. 7, Exhibit L).[10] Moreover, neither the Debtor nor the

Defendants have taken any measures under the note or mortgage, or under the Fair Foreclosure

Act, to de-accelerate the debt, and the Defendants have further failed to file a foreclosure

complaint within 6 years of the accelerated maturity date as required by N.J.S.A. § 2A:50-

56.1(a). Accordingly, the Defendants are now time-barred from filing a foreclosure complaint

and from obtaining a final judgment of foreclosure.

### The Disallowance of the Defendants' Proof of Claim and Avoidance of the Underlying Mortgage.

On July 17, 2014, the Defendants timely filed secured proof of claim 7-1 under 11 U.S.C.

§ 501(a) for $920,469.86 based on their note and mortgage (the claims bar date was August 18,

2014).   A claim in bankruptcy is a "right to payment, whether or not such right is reduced to

judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

legal, equitable, secured, or unsecured."   11 U.S.C. § 101(5)(A).   Debt is "liability on a claim."

11 U.S.C. § 101(12).   Moreover, pursuant to 11 U.S.C. § 102(2), a claim against the Debtor's

property also constitutes a claim against the Debtor. Thus, while Defendants have only *in rem*

---

[10]  Whether the default were measured from July 1, 2007 or from the December 14, 2007 filing date of the foreclosure complaint, the statute of limitations under N.J.S.A. § 2A:50-56.1 has still run.

claims, having failed to sue on the note within the six years permitted under the statute, such claims remain claims against the Debtor in this bankruptcy proceeding.

11 U.S.C. § 502(a) controls the claims allowance process:  "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."   11 U.S.C. § 502(a).   Debtor's adversary complaint includes a demand which constitutes an objection to the Defendants' proof of claim:  "Determine that Defendants have no allowed secured claim" (dkt. 1, "Request for Relief, p. 4, ¶ b) and triggers the Court's review.  11 U.S.C. § 502(b) governs unenforceability of claims and states in relevant part:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section [not relevant here] if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or *applicable law* for a reason other than because such claim is contingent or unmatured.

11 U.S.C. § 502(b)(1) (emphasis added).   11 U.S.C. § 506 controls the allowance of secured claims and provides that, if the claim underlying the lien is disallowed, then the lien is void:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
> . . .
>
> (d) **To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void**, unless [conditions not relevant here exist].

11 U.S.C. § 506(a)(1) and (d)(emphasis added).

As explained above, by application of N.J.S.A. § 2A:50-56.1(a) and (c), the Defendants are time-barred under New Jersey state law from enforcing either the note or the accelerated mortgage.  As a result, Defendants' proof of claim 7 must be disallowed under 11 U.S.C. § 502(b)(1) as unenforceable against the Debtor or against Debtor's property under applicable state law.  Having determined that Defendants do not have an allowed secured claim, the underlying lien is deemed void pursuant to 11 U.S.C. §§ 506(a)(1) and (d).[11]

## V.    CONCLUSION.

In light of Defendants' acceleration of the maturity date of the underlying debt as of June 1, 2007, and because neither Debtor nor Defendants took any action under either the mortgage instruments, or the Fair Foreclosure Act, to de-accelerate the maturity date, Defendants' right to file a foreclosure complaint expired 6 years after the June 1, 2007 acceleration date under N.J.S.A. § 2A:50-56.1(a). Given that Defendants' putative secured claim is unenforceable under 11 U.S.C. § 502(b)(1), by applicable New Jersey statute, their mortgage lien is void under 11 U.S.C. § 506(d), and the Debtor retains the property, free of any claim of the Defendants. Debtor is to submit a form of judgment. The Court will proceed to gargle in an effort to remove the lingering bad taste.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: November 5, 2014

---

[11] Inasmuch as the Court finds that the Defendants are time-barred from enforcing the note or the mortgage, it is not necessary to address Debtor's arguments that Defendants lack standing to enforce the note and mortgage based on alleged defects in the Assignment or the alleged impact of a Settlement Agreement.