**BALLARD SPAHR LLP**
Daniel JT McKenna
Christopher N. Tomlin
210 Lake Drive East, Suite 200
Cherry Hill, NJ  08002
(856) 673-3840 (ph)
(856) 761-1020 (fax)
mckennad@ballardspahr.com
tomlinc@ballardspahr.com

*Attorneys for Defendants-Creditors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 14-14573 (TBA) |
| | Chapter 13 |
| GORDON ALLEN WASHINGTON, | |
| | |
| Debtor. | |
| | |
| | |
| GORDON ALLEN WASHINGTON, | Adv. Proc. No. 14-01319 (TBA) |
| | |
| Plaintiff-Debtor, | |
| | Hearing Date: _____, 2014 at _:__ _.m. |
| vs. | |
| | |
| SPECIALIZED LOAN SERVICING LLC | Judge: TBA |
| and THE BANK OF NEW YORK | |
| MELLON, as TRUSTEE for the | |
| CERTIFICATE-HOLDERS of the | |
| CWABS, INC., ASSET-BACKED | |
| CERTIFICATES, SERIES 2007-5, | |
| | |
| Defendants-Creditors. | |

## BRIEF IN SUPPORT OF <u>EMERGENCY</u> MOTION FOR STAY PENDING APPEAL

Pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8005,

Specialized Loan Servicing LLC ("SLS") as special servicer for The Bank of New York Mellon

FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-

BACKED CERTIFICATES, SERIES 2007-5 s/h/a The Bank of New York Mellon, as Trustee

for the certificate-holders of the CWABS, Inc., ASSETBACKED CERTIFICATES, SERIES

2007-5 (the "Trust," with SLS the "Defendants-Creditors") moves for a stay of the November 17

Order Granting Debtor's Motion for Summary Judgment (the "Order") [Doc. No. 30].[1]  Because

SLS is the servicer of the mortgage, this motion will refer to the Defendants-Creditors

collectively as "SLS."

SLS will appeal the Order before the time runs to file a Notice of Appeal.  SLS believes

that the District Court will agree that, under the plain language of N.J.S.A. § 2A:50-56.1, the

time for SLS to commence a foreclosure has not run.  If this Court does not grant a stay pending

appeal, SLS will suffer irreparable harm because the Debtors will have the ability to sell or

encumber the property, and SLS will be without any means to collect the debt by recourse to the

collateral.  On balancing the likely harm versus the Debtor's interests, SLS is entitled to a stay of

the Order pending a resolution of the appeal.  At the very least, SLS is entitled to a brief stay

pending approval of a supersedeas bond under Federal Rule of Civil Procedure (the "Rules")

62(d), incorporated into adversary proceedings under Federal Rule of Bankruptcy Procedure

7062, which bond SLS is entitled to obtain as a matter of right.

## I.    This Court Should Stay the Order Pending Appeal

Bankruptcy Rule 8005 gives this Court broad discretion to stay an order pending an

appeal.  See In re Trans World Airlines, Inc., 18 F.3d 208, 211 (3d Cir. 1994) ("Bankruptcy Rule

8005, by its terms, provides the bankruptcy court with substantially broader discretion than

---

[1]      The Court signed the Order and the Clerk of the Court entered it on the docket on
November 18.  The Court directed the Debtor to submit a proposed order, with which direction
the Debtor complied on November 11.  The Court entered the proposed order on November 18
before the time had run for SLS to object.  D.N.J. LBR 9072-1(d); Fed. R. Bankr. P. 9006(f);

afforded a court by Rule 62."); <u>Poplar Grove Planting & Ref. Co. Inc. v. Bache Halsey Stuart</u>

<u>Inc.</u>, 600 F.2d 1189, 1191 (5th Cir.1979) (court may depart from the usual requirement of a

supersedeas bond).

Bankruptcy Rule 8005 provides:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval or a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance.  Notwithstanding Rule 7062 but subject to the power of the district court . . ., the bankruptcy judge may suspend or order the continuation of other proceedings in this case under the Code or make any other appropriate order during the pendency of the appeal on such terms as will protect the rights of all parties in interest.

Fed. R. Bankr. P. 8005.

When considering whether to grant a stay pending appeal under Bankruptcy Rule 8005,

bankruptcy courts generally consider the following factors:  (1) whether the appellant is likely to

succeed on the merits of an appeal; (2) whether the appellant will suffer irreparable injury if the

stay is not granted; (3) whether a stay would substantially harm other parties to the litigation; and

(4) whether a stay is in the public interest.  <u>In re Family Kingdom</u>, 225 B.R. 65, 69 (D. N.J.

1998); <u>In re Roth American, Inc.</u>, 90 B.R. 94, 95 (Bankr. M.D. Pa. 1998).

"Additionally, no single factor is outcome determinative.  Rather, the court must balance

all of the elements in order to reach an appropriate determination."  <u>In re Hudson's Coffee, Inc.</u>,

No. 05-60470, Adv. No. 06-1458, 2008 WL 4837285, at *2 (Bankr. D. N.J. Oct. 31, 2008)

(citing <u>In re Roth American</u>, 94 B.R. at 95); <u>see also</u> <u>In re Edwards</u>, 228 B.R. 573, 575-76

(Bankr. E.D.Pa. 1999) (stating the majority view that a court may balance all four factors in

deciding whether to grant a stay pending appeal).

---

Fed. R. Civ. P. 5(b)(2)(E).  On November 19, the Debtor submitted via email a new proposed
Amended Order.  SLS's deadline to object to the proposed Amended Order is December 1.  <u>Id.</u>

A.    SLS Is Likely To Succeed On Appeal

Convincing a court that its decision is likely to be overturned is not an enviable task and it is only rarely that a court will acknowledge that its decision could be overturned.  The harsh result of the facts applied here, and the court's new interpretation and application of law, in this case should make it the exception.  See In re Lickman, 301 B.R. 739, 743 (Bankr. M.D. Fla. 2003) (in considering a request for a stay pending appeal, likelihood of success should refer to issues that are sufficiently serious, substantial, difficult or doubtful, as to make them "fair ground for litigation"; citing In re Yellow Cab Cooperative Ass'n, 192 B.R. 555, 557 (D. Colo. 1996) and United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enterprise Management Consultants, Inc., 883 F.2d 886, 889 (10th Cir.1989)); see also In re MAC Panel Co., 2000 WL 33673784, at *3 (Bankr. M.D.N.C. Mar.8, 2000) (measuring the "likelihood of success" on a sliding scale that considers the balance of the parties' respective hardships).

As this Court is aware, its decision (the "Memorandum Decision" [Adv. Doc. No. 28]) has an extreme and penalizing result – a borrower that went into default 90 days after securing a $520,000 loan is getting a free house and SLS is losing its security interest in the property that is its bargained-for collateral intended to insure the repayment of the loan.  (Mem. Dec. at 1, 4 n.4 ("The unassailable fact that Debtor went into default within 90 days of the loan closing makes this decision even less palatable.")).

This decision was based on an interpretation of the statute of limitations relative to foreclosure proceedings, N.J.S.A. § 2A:50-56.1, that no court has previously employed.   Even this Court did not like the results of its own decision.  The Court granted the motion with "a figurative hand holding the nose", "a proper measure of disquiet and chagrin" and noted that it

will "proceed to gargle in an effort to remove the lingering bad taste" from the decision it felt

compelled to make. (Id. at 1, 23).

The Court's decision turned on its finding that Section 2A:50-56.1(a)'s six-year statute of

limitation applied to bar SLS' right to foreclose on the Debtor's property and, thus, its claim in

the Debtor's bankruptcy proceedings. SLS believes that there is a better interpretation of the

ordinary and plain language of that Section, and that the longer 20-year statute of limitation

contained in Section A:50-56.1(c) applies running from the date of default. SLS further believes

that the District Court will agree.

Section 2A:50-56.1 provides that an action to commence a residential foreclosure shall

not be commenced following *the earliest* of:

> a. Six years from the date fixed for the making of the last payment or the maturity date set forth in the mortgage or the note, bond, or other obligation secured by the mortgage, whether the date is itself set forth or may be calculated from information contained in the mortgage or note, bond, or other obligation, except that if the date fixed for the making of the last payment or the maturity date has been extended by a written instrument, the action to foreclose shall not be commenced after six years from the extended date under terms of the written instrument;

> b. Thirty-six years from the date of recording of the mortgage, or, if the mortgage is not recorded, 36 years from the date of execution, so long as the mortgage itself does not provide for a period of prepayment in excess of 30 years; or

> c. Twenty years from the date on which the debtor defaulted, which default has not been cured, as to any of the obligations or covenants contained in the mortgage or in the note, bond, or other obligation secured by the mortgage, except that if the date to perform any of the obligations or covenants has been extended by a written instrument or payment on account has been made, the action to foreclose shall not be commenced after 20 years from the date on which the default or payment on account thereof occurred under the terms of the written instrument.

The Court determined that an "accelerated maturity date" is included in

Section 2A:50-56.1(a), and held that the statute of limitations had run to commence a foreclosure

because the debt had been accelerated over six years ago. (Mem. Dec. at 19-21). This reading

requires the Court to go beyond the plain language of the statute and read something into the statute that does not appear in its text.  Nowhere does Section 2A:50-56.1(a) speak to an "accelerated maturity date."

The better interpretation of this statute – the interpretation that focuses on the plain language and is consistent with the statutory structure – is that Subsection (a) only deals with the maturity date "fixed" in the operative mortgage document.  See N.J.S.A. § 1:1-1 ("words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning").

Subsection (a) refers only to a date certain that can be derived directly from the mortgage or the note.  This Subsection leaves no room to look outside of the four corners of the operative loan document at a later occurring event, such as acceleration due to default, to calculate the date from which the statute of limitations begins to run.

Subsection (a) first refers to "the date fixed for the making of the last payment," which can only mean a date certain in the loan document.  Similarly, the next part refers to "the maturity date set forth in" the loan document.  Again, the maturity date "in" the  loan document is a date certain contained in that document.  Subsection (a) recognizes that the date "in" the operative loan document can be derived directly if the "date is itself set forth" (i.e., the maturity date set forth in the note, like the March 1, 2037 maturity date specified in Section 3(a) of the Note at issue in this case).   Or, that the "maturity date set forth in" the operative loan document "may be calculated from information contained in the mortgage or note, bond, or other obligation."  (Emphasis added).  Here again, this last clause refers only to a date certain that can be calculated "in" the four corners of the loan document.  When considering SLS's likelihood of

success, the Court should consider the canon of construction, *noscitur a sociis* ("a word is known

by the company it keeps"), where all of the references to the maturity date are in the company of

terms contained in the loan document.

The only reference to a document outside of the loan document in Subsection (a) is in the

last clause detailing an exception to the four corner rule for situations when the last payment or

maturity date has been extended by "a written instrument."  This exception does not apply here.

But, the manner in which the Legislature carved out this exception is important because the

Legislature specified that in order for this exception to apply there needs to be a later "written

instrument," such as an amended note.  See N.J.S.A. 12A:3-104(a), (b) ("'Instrument' means a

negotiable instrument," which is "an unconditional promise or order to pay a fixed amount of

money . . . .").  The Legislature made no such reference to a later document that accelerated the

maturity date because it did not intend for the courts to look outside of the operative loan

documents for the maturity date.

If the Legislature had intended for an accelerated maturity date to apply to Section

2A:50-56.1(a), it would have said so.  Indeed, the Legislature knew how to make such a

distinction because it did in the statutes of limitation for negotiable instruments:

> [A]n action to enforce the obligation of a party to pay a note payable at a
> definitive time must be commenced within six years after the due date or dates
> stated in the note or, <u>if a due date is accelerated</u>, within six years after the
> accelerated due date.

N.J.S.A. § 12A:3-118(a) (emphasis added).

Section 2A:50-56.1(a) makes no such carve out for the acceleration of the due date.  The

Legislature's choice not to include a reference to acceleration strongly demonstrates that it did

not intend to do so under the canon of *expressio unius est exclusio alterius*.  See Russello v.

United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (holding that "where

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely [sic] in the disparate inclusion or exclusion"); <u>Keeley v. Loomis Fargo & Co.</u>, 183 F.3d 257, 265-66 (3d Cir. 1999) ("Under the well-established principle of statutory construction, expressio unius est exclusio alterius, the legislature's explicit expression of one thing—here, certain exceptions to the overtime requirement—indicates its intention to exclude other exceptions from the broad coverage of the overtime requirement."). Any other interpretation reads something into the statute that is not there.

The Committee Notes further supports SLS's interpretation. Like Subsection (a), the Notes makes no mention of a later accelerated maturity date or a document accelerating the maturity date. Rather, in regard to Subsection (a), the Notes refer to commencing the foreclosure "six years from the date <u>on</u> the mortgage." (Emphasis added). The date "on" the mortgage is a date certain in the loan document. "[O]n the mortgage" cannot refer to something that happens in the future as the result of an entirely different document, such as a later acceleration, because the acceleration is "on" a different document.

In addition, the Court's interpretation will create the type of unnecessary confusion the statute of limitations relative to foreclosure proceedings was enacted to avoid. The Notes make clear that one of the primary purposes was to allow "a determination that certain mortgages are not clouds on title because a party can no longer bring an action to foreclose them beyond the bill's <u>expressly</u> stated statute of limitations." (Emphasis added). Subsection (a) does <u>not</u> expressly say that the statute of limitations runs from an acceleration of the maturity date. The confusion regarding the status of title will only increase by allowing the statute of limitations to run from a document accelerating the maturity date that will not be in the public records. This

confusion becomes even more apparent when trying to determine when the statute of limitation begins to run in the event of reinstatement.  Such confusion does not exist under SLS's interpretation where the public knows that the statute of limitation runs until six years from the maturity date fixed in the loan documents.

Because a later acceleration of the maturity date should not be read into Subsection (a), the proper statute of limitations for this case is that for which Subsection (c) provides.  Under Subsection (c), SLS would have 20 years from the date of default in which to commence its foreclosure.  Based on the Debtor's 2007 default, SLS is still well within its time period to commence the foreclosure.

There is a real danger that the this Court's ruling could effectively wipe out Subsection (c).  When a borrower defaults, a lender's remedy under the loan document is to accelerate the debt (and some instruments provide that acceleration happens automatically).  Under the Court's reading, the statute of limitations could begin to run as soon as the lender gives a notice of default stating that the debt has been accelerated absent reinstatement.  This reading would make the circumstances under which Subsection (c) would apply virtually nonexistent and would create disharmony in the statute.

Even if the Court does not believe that SLS will succeed on appeal, SLS has raised a serious legal issue and reasonable minds differ on the interpretation of this statute.  There is no doubt that SLS offers a reasonable interpretation of Section 2A:50-56.1 that the District Court could certainly adopt.  When balancing the difficulty of the interpretation issue, SLS's chances of success and the potential harm to SLS set forth below, this factor should favor SLS.

**B.      SLS Will Be Irreparably Harmed Absent a Stay**

This factor strongly favors SLS because there is little doubt that it will suffer irreparable

harm absent a stay.  SLS is in a different situation than the other creditors because its sole

remedy against the Debtor for his default on the loan is taking possession of the property that is

the collateral securing the Debtor's repayment, and doing so through foreclosure.  Accordingly,

any sale of the property would irreparably harm SLS.  Under the Court's Order, the Debtor owns

the house free and clear of SLS's first priority lien and the Debtor may immediately record the

Order wiping out SLS's interest.  Each of the Debtor's possible plans proposes to sell the

property in a short period in order to pay off the unsecured creditors.  (Mem. Dec. at 4).  None of

these plans contemplates paying SLS anything.  (Id.).   If a sale goes forward, SLS will not be

able to reverse it.  See generally 11 U.S.C. 363(m) (prohibits the reversal of sale to a good faith

purchaser of bankruptcy estate property).

Further, absent a stay the Debtor could otherwise encumber the property. In that event,

SLS would lose its first lien position.

The Court itself has recognized that absent a stay, plan confirmation is likely to go

forward, rescheduling the hearing on confirmation of the Debtor's plan for the exact expiration

of the fourteen-day stay of the Court's Order imposed by Bankruptcy Rule 7062.  Given this

borrower's history, taking a half million dollar loan and defaulting within a couple months, SLS

would not be able to collect money damages in any event.

Finally, there is a potential danger that if the Debtor sold the property it could argue that

its actions moot SLS's appeal.  See In re Cujas, 376 B.R. 480, 487 (Bankr. E.D. Pa. 2007)

("potential loss of a party's appellate rights through the mootness doctrine may constitute

irreparable harm"); In re Adelphia Comc'ns Corp., 361 B.R. 337, 348 (S.D.N.Y. 2007) ("loss of

appellate rights is a 'quintessential form of prejudice.'  Thus, where the denial of a stay pending

appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement

is satisfied.").   While SLS would oppose that argument given that it has moved this Court for a

stay (and would likewise move the District Court if this Court were to deny this motion), it

should not be put in that position.

### C.      Balancing of Harm to the Parties

The third factor favors SLS because the Debtor will not be harmed by a stay pending

appeal.  The Court's decision significantly changed the status quo from SLS having a priority

lien interest on the property, to the Debtor – after making no effort to pay back the loan for years

– having a house not subject to any mortgage and windfall walk-away from the debt of over

$500,000.  A stay pending appeal does not harm the Debtor, it only delays his potential, and

unjust, windfall.

While the stay could delay the potential for other creditors to receive money from the

proceeds of the sale of the property, the other creditors did not previously have access to the

proceeds from the sale of the property.  Other than a minimal tax claim, the other creditors are

unsecured and individually owed far less money than SLS.  (Mem. Dec. at 5 (Debtor scheduled

$137,000 in unsecured creditors and there are timely proofs on claims in the amount of $15,000

for a priority tax claims, $70,000 in general unsecured claims (including $15,000 claimed from a

relative) and $63,000 due on a student loan)).

The status quo was that SLS had a secured interest in the property and it was entitled to

foreclose to satisfy its debt.  The potential harm to SLS – losing its security interest and losing its

only means of being repaid – is far more damaging than the potential harm to the unsecured creditors.[2]

### D.    Public Interest

To the extent the public interest favors either side, it favors SLS.  In some ways the public has little interest – this adversary proceeding and the bankruptcy involve private parties. The public does, however, have a strong interest in the District Court providing clarity on the proper interpretation of Section 2A:50-56.1.  The Court's interpretation has the potential to derail attempts to modify defaulted borrowers loans and forebear foreclosure actions because of a new shorter time frame to commence foreclosures and the uncertainty regarding when the statute of limitations begins to run.  The public, including both borrowers and lenders, all have an interest in the outcome of the appeal.

### E.    This Court Should Stay the Order on Equitable Terms

On balance, the four factors favor the Court staying the Order pending the resolution of the appeal.  While not required, some courts will institute a bond or other equitable requirement when granting a stay under Rule 8005 to protect the rights of other parties, protect the property at issue from diminution in value, or to protect the prevailing party from a loss that might be sustained from an unsuccessful appeal.  This requirement is not the same as under Federal Rule of Civil Procedure 62 and Bankruptcy Rule 8005 gives the Court much broader discretion. Here, there is no need to protect the property from some loss of value to the Debtor and no risk of loss to the Debtor.  Because the Debtor is receiving an unjust windfall and the unsecured creditors would otherwise have no right to the proceeds from the Property, SLS respectfully

---

[2]    Despite the Debtor's failure to make payments, SLS has been paying the taxes and the insurance.

requests that the Court grant the stay of the Order without placing any further requirements on SLS.

If the Court is inclined to require more in the way of a bond, that requirement should be minimal and be narrowly tailored to protect the value of the property. For example, requiring SLS to put up an annual bond for the taxes and insurance on the property or requiring SLS to pay these costs would be reasonable under the circumstances to preserve the value of the property for the benefit of both the estate and SLS. Where SLS does not enjoy benefits of the property, the Debtor retains possession of the property, and the amount owed to the other unsecured creditors is substantially less than what is owed to SLS (and less than the current value of the property), it would be unreasonable and unfair to require SLS to put up anything higher.

**II.    Alternatively, the Court Should Stay The Order Pending Approval of a Supersedeas Bond**

If the Court does not grant this stay, SLS will file an application for approval for the supersedeas bond when it files its Notice of Appeal under Bankruptcy Rule 7062 and Rule 62. Due to the upcoming holiday and the general backlog of cases, there is a real danger that SLS's application a bond will not be approved before the automatic stay under Rule 7062 expires.

At the minimum, and in order to protect SLS's interests, SLS requests in the alternative that the Court use its discretion to grant a brief stay of the Order pending the approval of SLS's application for supersedeas bond.

## CONCLUSION

WHEREFORE, for all of the reasons set forth above, SLS respectfully requests that the

Court stay the Order pending resolution of the appeal.  In the alternative, SLS respectfully

requests that the Court stay the Order pending approval of SLS's application for supersedeas

bond.

Respectfully submitted,

BALLARD SPAHR LLP

Dated:  November 24, 2014        By: ____/s/ Christopher N. Tomlin_____
Christopher N. Tomlin
210 Lake Drive East, Suite 200
Cherry Hill, NJ  08002
(856) 673-3840 (ph)
(856) 761-1020 (fax)
tomlinc@ballardspahr.com

-and-

Daniel JT McKenna
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 864-8321 (ph)
(215) 864-8999 (fax)
mckennad@ballarspahr.com

Attorneys for Defendants-Creditors